**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WILLIAM P. ROGERS,

               Plaintiff,

v.                                   CIVIL ACTION NO.   2:13-cv-32741

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff William P. Rogers' Complaint seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"). (ECF 2.) By standing order entered April 8, 2013, and filed in this case on December 24, 2013, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and recommendations for disposition (the "PF&R"). (ECF 4.) On January 30, 2015, Magistrate Judge Tinsley entered his PF&R, which recommends that this Court deny Plaintiff's Brief in Support of Judgment on the Pleadings, (ECF 10), and affirm the final decision of the Commissioner. (ECF 15.) Plaintiff filed timely objections to the PF&R on February 16, 2015 (the "Objections"). (ECF 16.)

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF 16), **ADOPTS** the PF&R, (ECF 15), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF 10), **GRANTS** the

1

Commissioner's request for judgment on the pleadings, (ECF 11), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## *I.  Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for disability insurance benefits and supplemental security income on March 14, 2011, alleging disability as of December 1, 2008.[1] (ECF 9-2 at 16; ECF 9-8 at 66.) The application was denied initially on June 10, 2011, (ECF 9-5 at 12–16), and upon reconsideration on August 12, 2011, (*id.* at 23–29).

A hearing was held before Administrative Law Judge Harry C. Taylor II (the "ALJ") on July 10, 2012. (ECF 9-2 at 38–65.) On August 1, 2012, the ALJ issued an unfavorable decision.[2] (*Id.* at 16–30.) The Appeals Council denied review of the ALJ's decision on October 29, 2013. (*Id.* at 2–4.) Thereafter, on December 20, 2013, Plaintiff filed the Complaint in this Court. (ECF 2.)

## *II.  Standard of Review*

### A.    **Review of the PF&R**

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations

---

[1] The March 14, 2011 Application Summary for Supplemental Security Income provides an onset date of April 22, 1989. (ECF 9-7 at 7.) On the other hand, the relevant Field Office Disability Report and the administrative law decision presently at issue note an alleged onset date of December 1, 2008. (ECF 9-8 at 66; ECF 9-2 at 16.) However, these differences related to the alleged onset date are not material for purposes of addressing the Objections.

[2] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since March 14, 2011, the application date." (ECF 9-2 at 18–19.) At step two, the ALJ found that Plaintiff has the following severe impairments: "chronic obstructive pulmonary disease, chronic cervical, thoracic, and lumbar strain, arthralgias, major depressive disorder, borderline intellectual functioning/reading, learning, and cognitive disorder." (*Id.*) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 19–22.) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)," with certain listed limitations. (*Id.* at 22–28.) The ALJ also found that Plaintiff "has no past relevant work." (*Id.* at 28.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 29–30.) The ALJ relied on the testimony of a vocational expert in making this step-five determination. (*See id.*)

to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.     Review of the ALJ's Findings and Decision**

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff bears the burden of proving to the Commissioner that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). "The term 'disability' means . . . inability to engage in any substantial gainful

3

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III. Discussion

Plaintiff's sole objection is to Magistrate Judge Tinsley's finding in the PF&R that substantial evidence supports the ALJ's step-five determination based on testimony provided by a vocational expert in response to the ALJ's hypothetical query.[4] (ECF 16.)

At step five of the "sequential evaluation" process, the burden shifts to the Social Security Administration to establish that a claimant is able to perform work other than any past relevant work "considering both his remaining physical and mental capacities (defined as residual

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

[4] This was also Plaintiff's only argument in his Brief in Support of Judgment on the Pleadings. (*See* ECF 10.)

4

functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see* 20 C.F.R. §§ 404.1520(f) & 416.920(f). In order to satisfy this burden, an ALJ may introduce the testimony of a vocational expert. *E.g.*, *Cline v. Chater*, 82 F.3d 409, at *2 (4th Cir. 1996); *see Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) ("In deciding whether the Commissioner has met her burden, the ALJ generally must accept evidence from a vocational expert . . . ."). "Vocational experts are not experts . . . who are qualified to render opinions on how the claimant's ailments might be reflected in his capabilities; rather, they are employment experts who know the mental and physical demands of different types of work." *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (citations omitted). "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [the] particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). "[R]equiring the testimony of a vocational expert is discretionary." *Hall*, 658 F.2d at 267 (citation omitted).

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker*, 889 F.2d at 50–51 (citations omitted). To frame a hypothetical question, the ALJ translates the claimant's impairments into a residual functional capacity ("RFC") from which the vocational expert can determine whether work is available in the national economy. *See Fisher*, 181 F. App'x at 364 ("[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert."). *See generally* 20 C.F.R. § 416.946(b) (stating that "a disability hearing officer is responsible for assessing" a claimant's RFC). A hypothetical question is then "proper if it

5

adequately reflects a claimant's RFC for which the ALJ had sufficient evidence." *Nay v. Colvin*, No. 4:13–CV–30–FL, 2014 WL 4097604, at *6 (E.D.N.C. Aug. 20, 2014) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)). "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)); *see also id.* ("[T]he hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe." (citing *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983)). The administrative law judge "has great latitude in posing hypothetical questions," *Koonce v. Apfel*, 166 F.3d 1209, at *5 (4th Cir. 1999), and "a hypothetical question is unimpeachable if it 'adequately reflects' a residual functional capacity for which the ALJ had sufficient evidence." *Fisher*, 181 F. App'x at 364 (quoting *Johnson*, 434 F.3d at 659).

In this case, the Objections relate to a narrow issue associated with the ALJ's hypothetical question to the vocational expert—that the ALJ "did not translate the intellectual impairments into functional capacities" and, instead, only "summarized [Plaintiff's] impairments for the [vocational expert]." (ECF 16 at 2–4.) During the July 10, 2012 hearing, the ALJ had an exchange with the vocational expert that included, in relevant part, the following:

> [ALJ:] I'll ask you . . . to hypothetically consider an individual as in the present case with education, training and work experience. Assume I should find that they suffer from a major depressive disorder, recurrent and moderate in nature. They have a verbal IQ of 81, a performance IQ of 76, and a full scale IQ of 77, according to B14F. There's a reading disorder, a learning disorder not otherwise specified, and a cognitive disorder not otherwise specified. Of course, the IQ's are in the borderline intellectual function range. Reading and spelling are both -- on a standard score they were both below 45. He suffers from chronic obstruction pulmonary disease unless he uses his inhaler and would create some environmental limitations. He also suffers

from some lower back pain, which radiates into his legs, worse on the left. He could probably only occasionally do the postural movements of climbing, balancing, stooping, kneeling, crouching, and crawling. We'd want to avoid concentrated exposure to extreme cold, extreme heat, to vibrations, fumes, odors, dust, gasses and poor ventilation, as well as the hazards -- heights. And of course the testimony was that he did not have a driver's license. Due to his depression, he has crying spells that last for several minutes. There's going to be some restrictions in dealing with the general public with no more than a superficial basis. There's going to be some restrictions in accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers and peers. He could probably lift 20 pounds but only occasionally. He's going to be limited to work consistent with the intellectual functioning. He would be limited to dealing with only minor stresses at a work environment. Now if those were his residuals, would there be any work such an individual could perform on a sustained basis?

[VE:]   Based on this hypothetical, Your Honor, and my understanding of the moderate depression, the -- with no public, and I'm assuming the instructions from the supervisors is moderate as well the way I interpreted that. So based on that, yes Your Honor, I would be able to list some work for such a person. Under light work, sorter, <u>DOT</u> number 529.687; numbers in the region, the tri-state area of West Virginia, Ohio, and Kentucky over 1700; in the nation, over 300,000. Hand binder, <u>DOT</u> number 920.687-026. Numbers in the region, over 1600; in the nation, over 200,000. And hand packer, <u>DOT</u> number 784.687-042. Numbers in the region, over 2100; in the nation, over 300,000. Those are all light, SVP: 1 or 2.

[ALJ:]  Would there be anything at sedentary?

[VE:]   Yes, Your Honor. Under sedentary work, hand packer, <u>DOT</u> number 920.687-030. Numbers in the region, over 2100; in the nation, over 220,000. Stumper: <u>DOT</u> number 731.685-014; numbers in the region, over 1,000; in the nation, over 230,000. And patcher, <u>DOT</u> number 723.687-010. Numbers in the region, over 1200; in the nation, over 180,000. Those are all sedentary, SVP: 1 or 2.

(ECF 9-2 at 61–63.)

The Court finds that the ALJ's hypothetical question adequately reflected Plaintiff's RFC. As Plaintiff notes, the ALJ provided detailed information regarding those impairments he found credible. (*See* ECF 16 at 3.) However, contrary to Plaintiff's assertion, the hypothetical also

includes descriptions by the ALJ of how those impairments translate into limitations on Plaintiff's ability to perform work.[5] (*See* ECF 9-2 at 61–63 (providing descriptions of Plaintiff's physical, mental, and social limitations).) As such, the vocational expert was not left to guess as to Plaintiff's RFC based only on a recitation of Plaintiff's impairments. *See, e.g.*, *Smith v. Sullivan*, 733 F. Supp. 450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's various physical impairments is not going to be nearly as useful to the vocational expert as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments."). Given that this detailed hypothetical adequately reflected Plaintiff's RFC, the Court defers to the ALJ's "great latitude in posing hypothetical questions." *Koonce*, 166 F.3d at *5.

The Court finds that the ALJ's step-five determination—which incorporated the vocational expert's response to the hypothetical question—is supported by substantial evidence. Accordingly, the Court **OVERRULES** Plaintiff's Objections.

---

[5] Plaintiff specifically raises the issue of whether the hypothetical provided sufficient information regarding Plaintiff's limitations as to intellectual capacity and ability to interact with others. (*See* ECF 16 at 2–4.) These concerns are misplaced. As to intellectual functioning, the ALJ both summarized Plaintiff's relevant tests *and* noted that Plaintiff's IQ was "in the borderline intellectual function range." (ECF 9-2 at 61–62.) The Court finds that the ALJ's hypothetical adequately reflected Plaintiff's intellectual limitations. *Cf. Grissom v. Barnhart*, 416 F.3d 834, 837–38 (8th Cir. 2005) (finding that a vocational expert's testimony in response to a hypothetical that "did not reference" a claimant's "borderline intellectual functioning"—as well as other pertinent information—did not provide substantial evidence in favor of the administrative law judge's decision).

Regarding interaction with others, the ALJ provided the limitations he deemed credible as including interactions with the general public on "no more than a superficial basis," as well as "some restrictions in accepting instructions and responding appropriately to criticism from supervisors." (*Id.*) As Plaintiff notes, the vocational expert did respond that she was "assuming the instructions from the supervisors is moderate," then gave an answer based on that assumption. (*See* ECF 16 at 3.) However, Plaintiff does *not* contend that this assumption was incorrect. (*See* ECF 16.) Absent such an assertion and given the ALJ's detailed hypothetical, the Court has no basis to find that the ALJ's hypothetical question failed to adequately reflect the ALJ's findings as to Plaintiff's RFC. *See, e.g.*, *Fisher*, 181 F. App'x at 364 (stating that "a hypothetical question is unimpeachable if it 'adequately reflects' a residual functional capacity for which the ALJ had sufficient evidence" (quoting *Johnson*, 434 F.3d at 659)); *cf. id.* (finding that a "superficially ambiguous" hypothetical "fairly conveyed" the claimant's RFC where "the vocational expert evidently understood" the proper query).

*IV.  Conclusion*

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF 16), **ADOPTS** the PF&R, (ECF 15), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF 10), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF 11), **AFFIRMS** the decision of the Commissioner, **DISMISSES** this action, and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

9